So did you get that from Ms. Tisa? She's on it. You know, that was a new one that I saw on bond, but, oh, okay. Whenever you're ready. Morning, mate. Please the court. Counsel. My name is Rachel Reese and I represent the appellant Alvaro Valdez. This case involves several issues that are associated with the sentence that Mr. Valdez ultimately received after he entered a guilty plea to one count of conspiracy to commit sex trafficking of a minor by patronizing and one count of distribution of child pornography. The errors that were made by the district court largely relate to the conspiracy count. That Mr. Valdez entered a plea to. This specific count that he pled to was knowingly conspiring to sex traffic a minor by patronizing in violation of title 18 United States Code section 1594. And at the time of his sentencing, the district court ultimately found that a base offense level of 30 was appropriate where Mr. Valdez argued that a base offense level of 24 was actually what the law clearly established. It is our position that the district court erred and should have sentenced him with the base offense level of 24. Pursuant to section 2G 1.3 of the sentencing guidelines, defendants who are convicted. Under section 1591 subsection B2, which is what the district court used in this case are to be given a base offense level of 30. It's our position that this was an error as another subsection under 2G 1.3 clearly establishes an otherwise category, which is what our position is Mr. Valdez's conviction actually falls under, which would have as a result given him a base offense level of 24. Let me ask you, how does 2X 1.1A fit into this? What are we supposed to do with that in relation to 2G 1.3? Your Honor, our position is that the statute, the section 2G 1.3 on its face is clear. However, in applying the 2X 1.1, the issue then becomes what is a substantive offense? I think that's where the main issue lies. And in this specific situation, the substantive offense is what we're arguing falls under that otherwise category. And let me ask you, why is that? Because in the charging language of the superseding information, it says that it's a conspiracy to violate, you know, and then it's got a few different things. But it's got 15, it's got 1591 B2 in there as part of it. And while I recognize that's a penalty provision, it still does have that expressly as one of the violations that the conspiracy contemplated. So how do we deal with that? Yes, Your Honor, and I can't dispute the fact that that is in the superseding indictment and the original indictment as well. However, because of the specifics of this case, Mr. Valdez, and I think that the record reflects it throughout of the fact that this was solely based on the patronizing aspect of the statute, which has only recently come into effect, that is why this falls into the otherwise category. Do you agree that the subsection B elements are Apprendi elements? Yes. Have to be, right? Yes. So as Apprendi elements, they're required to be proven, they're required to be charged. Yes, Your Honor. So how can we say that it's not? And as I understand the definition of substantive offense, it is, quote, the offense that the defendant was convicted of conspiring to commit. That includes all the Apprendi elements, all the necessary elements that would need to go in there, right? Yes, Your Honor. Right, so it's a tough road to hoe if I think if we aren't to consider 1B1.2 and 2X1.1, that would get us to the offense of conviction where the superseding indictment had those elements and it's required to be proven in this case. And it seemed like Wei Lin, the one you rely on, for whatever reason, subsection B wasn't alleged in the underlying charging documents, right? Correct. And that case, of course, is distinguishable factually and legally speaking. I don't even believe that a minor was involved. It was an adult. It's a different guideline even. Of course. I have to tell you, I'm more interested in the computer argument or the one that troubles me more is the computer argument. Can we talk about that? Of course, Judge. Absolutely. So let me ask you this. First of all, you agree with me that the guideline says the offense involved has to involve a computer. I'm summarizing, but it's the offense involved, right? Yes. Not defendant specific. Correct. Okay. So if we look at the offense and we look at what some of his co-conspirators did, I know there's a few things. There's the posting on the back page site. Let's put that aside for a second. There also seems to be in the facts, both in the PSI and the factual proffer, a communication between Ms. Gonzalez and your client, right? Correct. Wouldn't that be part of offering soliciting the various verbs that are used in the computer section to qualify for use of a computer where the offense involved it? If a co-conspirator helped to set this up by communicating over direct messaging on Instagram to set up the tryst that ended up happening? I understand your Honor's argument in that. It's not my argument. It's my question. I think the answer to that question is yes, there was obviously the communication, the response to the ad, which was the only communication that was had, basically explaining where to meet up essentially for the hotel. But that communication was not used by Mr. Valdez to engage with the sexual conduct with the minor. Well, isn't Ms. Gonzalez's telling him the details of where to meet and what the deal is? In other words, as I understand what happened is, and again, these are from the PSI and from the factual proffer, there's a back page ad to which he looks up. And he responds to. And then he then direct messages her, Ms. Gonzalez, and she direct messages him back in order to set up what ended up happening at the hotel, right? Correct. Wouldn't her direct messages at that point be use of a computer, have the fence involve the use of a computer in order to solicit, offer, and do the things that the guideline says that you can't do? I think that's where the problem lies, is that this, from our position, is that that wasn't used to solicit the sexual acts of a minor. One of the arguments that was made to the district court was the fact that Mr. Valdez. One of them is encourage, right? Isn't that one of the? Correct. And I'm not disputing that those. Isn't telling someone where to go, how much to pay, where to meet, what the details are? Arguably, yes. I think that the main issue, though, is the fact that they would have had to have established that he knew at that point in time that he was going to meet a minor, which he did not know. Even under the elements that the government would have had to have proven or what Mr. Valdez admitted to at his change of plea or the sentencing, I think that the main issue is the fact. Which has to be a prohibited sexual act. I don't know that it has to be you have knowledge of a minor at that time, because the prohibited sexual act here involves reckless conduct. It doesn't involve knowing they're a minor. In fact, he pled guilty to recklessly going in and recklessly doing what he did with someone who was underage, right? Yes. But at the time when these messages were exchanged, the issue of minor A actually being a minor was not something that Mr. Valdez had any knowledge of at that point in time. That wasn't something that was discussed in the messages or anything to that matter of. Prohibited sexual act, though, under the guideline is any sexual activity for which a person can be charged with a criminal offense. In other words, you're doing it to set up sexual activity for which you can be charged based on what ends up happening, right? Correct. It's our position that the use of the cell phone in this situation, the direct messages with Ms. Gonzalez, that is not sufficient under what the enhancement provides for to establish that two-level enhancement. That's already something that's established under the elements of this case. It's our position that the acts of Ms. Gonzalez absolutely would have fallen underneath the two-level enhancement for posting the ad and using a computer or a cell phone or some other electronic device to do that. But the fact of the matter is that Mr. Valdez didn't have any part in that, and he only merely responded to that. And I think that's the biggest argument that was made at the district court and why they aired is because he didn't actually use the computer or the cell phone to establish this. Let me ask you a question. Was it necessary for him to use a computer to take advantage of the offer that is to join the conspiracy? Was it necessary for him to use a computer to do that? I cannot disagree with that, obviously. Well, how was it necessary for him to use a computer? Could he have done it by phone just to the part where he gets involved? Arguably, yes. So then it wasn't necessary for him to use a computer to become involved? Correct. And looking at it from that perspective and not from the facts of this case, then it wasn't necessary. Whereas the things that happened before he became involved, it was necessary for them to use the computer because that's how they got their clients. They wouldn't have been able to reach clients otherwise. Correct. And by the time Mr. Valdez got involved, obviously he had no involvement or would never have been able to foresee that they were posting these ads because they had already been posted at that point in time. So would it be fair to say that as far as his involvement with the use of the computer was concerned, it did not facilitate in any way his commission of the conspiracy? Correct. That is our argument. Thank you. Thank you, Your Honor. May it please the Court. Lisa Hirsch for the United States. Seated with me at council table is the trial attorney in this case, Francis Villamonte. And I'd like to welcome the Court back to Miami for oral argument. The government contends that the district court committed no procedural or substantive error in this case. The court first correctly chose a base offense level by using 2X1.1 to find what the underlying substantive offense was and looked at the superseding information to choose B2 and apply that offense level correctly. I think the Waylon case is distinguishable in that apparently that section was not in the indictment and in any event that that court went beyond what the guideline says and chose to apply it in a different way. Mr. Valdez, unlike Mr. Waylon, knew at his change of plea that he likely faced an offense level of 30 as can be seen in the change of plea transcript. There are no questions on that. I'll proceed to the use of the computer. And the use of the computer would... It's just a guideline question. I think I want to talk about that as well. But for guideline 2G1.3A, what offenses would be, quote, otherwise? If Your Honor looks at the guideline book underneath the otherwise, there's a short paragraph that says commentary. And it lists the offenses that are applicable to that particular guideline level. And there are a number of them other than 1591B1 and B2. And it's our contention that that is what it applies to. The other offenses that are in the commentary that 8 U.S.C. 1328, A3 mentions specifically offense level 28 if it's 2422B or 2423A. But if you look at the commentary, 18 U.S.C. 2421 and 18 U.S.C. 2425 also apply to 2G1.3. So it's our contention that's what the otherwise applies to. And that's an exhaustive list in your view? I don't know if it's... I'm not sure how to answer that question. I think that, you know, A1 applies for 1591B1 and A2 applies to B2. And then... Isn't there some offenses under 1591 that don't have the two enhancements? In other words, I know the amicus brief mentions a forced labor case for an adult. So that does not involve violence. And amicus seems to suggest that in those cases, either the enhancements don't apply because there's no violence involved, and no one is under either 18 or 14. And so there does seem to be room even in 1591, according to amicus, for the application of the otherwise, correct? I thought that was an excellent brief, and I... Lucky to have it. Yes, very fortunate to have that brief. I thought they did an excellent job explaining the guideline system. Let me ask you a question, and I'm not sure this actually bears on the outcome, but I just thought it was interesting that when you look at the penalty for 1594B, it says... It's different from... It doesn't have a mandatory minimum. But 1594... 1591B2 does have a mandatory minimum. And the other interesting thing is 1594A specifies some other sections, like 1590, 1592, et cetera, and says the penalty shall be the same for conspiracy as it is for the underlying violation. But for B, which involves 1591 offenses, it does not. And I wonder if that's something that should be taken into account here. No, Your Honor. I just think that the 2X1.1 covers that, even though the statute itself didn't write it into it as B did. So your position would be then that there's nothing that would have prevented or precluded the Sentencing Commission from assigning the same penalty to both the substantive offense and the conspiracy, even though the statutory penalties are different? Correct, Your Honor. Okay. I think the district court handled it appropriately. Mr. Valdez knew at his change of plea that he was facing 30, and the district court properly applied it by using the cross-reference and the rule that applies to generally conspiracies in general. You know, I mean, just try to learn from these appeals. I mean, the thing that bothers me about this is, of course, everybody who enters a plea hears the maximum possible sentence they can receive, but they're all hoping it's not going to be that, right? And most often it's not that. And it just seems to me that all of these questions that we're dealing with could have been more explicitly addressed in the plea agreement so that he knew what to expect at sentencing and you knew what to expect at sentencing, and then we could avoid all this. Well, in this case, Valdez's counsel did say that he knew that the base offense level would likely be 30. That's at page 33 to 34 of the change of plea transcript, and that he would likely be facing a total offense level of 33 to 34, which is pretty much, you know, where he is now. But, you know, my point is the plea agreement could have been clearer. Do you disagree? Well, if they had agreed on the base offense level, then we wouldn't be here on that question that that was, but I think he was expecting a base offense level of 30. It wasn't a surprise to him, in other words. Let me ask you about the computer enhancement, and here's my concern. I mean, obviously the computer enhancement can apply to every single case, right? I mean, otherwise it would be part of the base offense level and we wouldn't have a specific offense characteristic for use of a computer. So can we agree on that? I don't know that it doesn't. When an ad is posted using a computer and somebody responds to that ad, I think we're out of just the use of a computer. I mean, one had to see this ad on backpage.com. Right, except that he had to be part of the conspiracy at the time that he saw, you know, at the time that he participated in any act in furtherance of the conspiracy, right? Well, he joins it and he responds and he arranges to meet, and then he goes to the meeting and he uses his phone to film that encounter. Except that the filming part is not a part of the specific offense characteristic for the conspiracy offense. Correct, Your Honor. So we can't really consider that. But he admits to having used his phone to direct message and arrange for the meeting, and so at that point I think he has used a computer. Simply because he used his telephone to direct message? Yes. Okay. So how is that any different than if he had picked up the phone and called? If he had picked up the phone and called, then I don't think we would have a use of a computer. Okay. So here's my concern. I mean, why would we enhance him for using a computer to do the exact same thing and not get any benefit out of that he could have done using a phone? The facts are the case that he used this method to contact the people who had arranged for the ad and for him to meet. But isn't sort of the concept behind the use of a computer enhancement the idea that it's worse because you can reach more people, you can do things secretively that you couldn't otherwise do, and it makes it more severe conduct. If he's doing the exact same thing that he could have done with a phone and he's not getting any benefit from having used a computer or any unique aspect to this, then I'm confused as to why an enhancement is warranted. Well, I think the conspiracy as a whole has used the computer and the back page ad to set this whole thing up. So I agree that there's a computer used before he gets there on the back page ad, et cetera. The problem is he hasn't joined the conspiracy at that point, so I don't see how we can use that conduct to enhance him as part of the conspiracy. You understand what I'm saying? I do, but I think it brings him into the conspiracy, and the use of the computer is what gets him there, and he knows that these people are out there enticing clients for the victim. So if he had used a phone to contact them and everything else was the same other than he used a phone to contact them, I thought you just said that you would not enhance him for the computer use. Is that right? Did I misunderstand? I think the use of a cell phone may be covered. Well, let's say he used a landline. Let's say he used a landline, and then he would not be covered by the use of a computer enhancement for this, right? I think he would still be covered because of the back page ad, and he joins his conspiracy. He did not place the back page ad. I understand that, but he responds to it. He responds to it, and he patronizes this. But he's not a part. When does he become a part of the conspiracy? Let me ask you that. Well, I think that the offense applies whether or not he's involved in the placement or the use of the computer. So somebody who doesn't use a computer but knows that the offense involves a computer can get this enhancement. Doesn't he have to be part of the conspiracy at the point when the computer is being used? I mean, how can he be held responsible for things that occurred before he became a part of the conspiracy? Can we agree on that much, that he had to be part of the conspiracy before? I think he uses the computer to see the ad and to respond to it. So I don't know we can separate him out. Well, let me ask you this, counsel, because I think this is the questions that Judge Rosenbaum is asking you, and I think I'm curious about it too. Can somebody be involved? Can someone agree to a conspiracy conduct that occurred before the agreement? In other words, let's say it's a drug transaction that's multilevel, and that involves a lot of drugs, more than could be possibly grown, and a type of drugs that could possibly be grown homemade in the United States. And someone comes to you and says, would you like to buy my 550,000 pounds of heroin that's grown in another place? And you say yes. Aren't you responsible for the importation that happened before the moment in which you agreed to buy all of that stuff at the warehouse down in Miramar? Yes, Your Honor. So you can be responsible or you can agree to conspiracy conduct that occurred before the fact that you said, I shake your hand, I agree. Yes, I agree with that. Is that the argument that you're making here? Is that at the time that he computerized shook hands with Ms. Gonzalez, he agreed to what had happened, which is there was an ad placed, which he responded to, and which they negotiated that came to it. Is that the argument that you're making? Yes, Your Honor. Let me ask you a question. If you're going to go down that route, and I'm not sure that you can, but let's just assume for the sake of argument you could, wouldn't there have to be particularized findings of fact by the district court as to precisely what his involvement was? Well, the court... I mean, isn't that what our case law says? The court said the computer was used, and I... But it didn't say how. Correct, Your Honor. So that's a problem. The computer was used, and I believed it was because of the back page ad to which he responded, and that the court can view the facts that were admitted to and affirm on that basis. Is this a relevant conduct case? So I think I... That's sort of the tension I sort of hear a little bit. So the guideline says the offense involved X or Y. Does that implicate the relevant conduct guideline where some enhancements apply specifically to a person and whether that person is liable for someone else's thing, or are there guidelines different where the offense involves something, you look at the scope of the offense to see whether it involved X or Y? That's an interesting question. I think that the way this guideline is worded, it's the offense involved, and I think, for example... Because there are other guidelines that are person-specific. Like in that same guideline, if you are a parent or a guardian of a child under a certain age, that's specific to you, and you would get enhanced, and that might be relevant conduct if you were involved in it. For example, sophisticated means, I think, that once upon a time it was if the offense evolved and then it became more particularized, that the guideline was changed to have it be more particularized, whereas this computer use is the offense evolved and not... So I don't think in this particular case it's relevant conduct. It's because the offense involved it, the offense that he pled guilty to. Can I just follow up on that? I want to make sure I understand your argument. You're not saying that he used a computer to entice, encourage, offer, or solicit himself. That's not your... He did not place the ad, if that's what you're... No, no, I just want to know, what you're saying is the people who place the ad are his co-conspirators, because they enticed, encouraged, offered, solicited, then he gets hit with the enhancement. Is that your argument? As a patron, he responds to the ad. But in doing so, is it your argument that he's enticing himself? No. Okay. No. But he has been enticed. Yes, and he becomes a patron, and the offense has involved the use of the computer because the back page ad was placed. Again, that's what leads to the whole discussion, even though that took place before he ever knew about the... I mean, the placing of the ad took place before he knew about the conspiracy. But then he responds to it. So it becomes part of what his conduct also entails. And you say that's not relevant conduct? I thought it was part of the offense. Okay. All right. If there are no further questions, I'd ask that the sentence be affirmed. Thank you. Thank you. May it please the court. Starting just kind of with something that Judge Rosenbaum brought up about when... I think it's important to talk about when he actually became part of the conspiracy because, obviously, he did not know these two people. He did not know his co-conspirators beforehand. He only met them for the first time when he actually got to the... I think it was a motel. Obviously, he did have a conversation with Ms. Gonzalez. But the way that he's charged, and I think it's important to know, is that part of the conspiracy is the fact that Minor A was a minor. So up until way beyond when the ad was posted and when the messages were exchanged, at none of those points did Mr. Valdez know or could he have known that Minor A was actually a minor. And so our position is that just further supports the fact that a computer should not have... A computer was not used in the manner that the enhancement provides. It's our position that it would... It's almost like double counting, in effect, because his conduct is already being punished under the base offense level. And the two-level enhancement, it does not... His conduct just does not support what the enhancement's purposes are. So our position on that is that the district court did err. Counsel? In United States v. Hunter, we said that we have a two-prong test for district courts to use to determine whether a defendant is accountable for his co-conspirators' actions. And we said, first, the district court must make individualized findings concerning the scope of criminal activity undertaken by a particular defendant. And this requires the court to determine the scope of the specific conduct and objectives embraced by the defendant's agreement. Let me ask you, did that happen on the record here? No. I believe when this issue was brought up, there was extensive argument between the parties, and then the district court very simply found that a computer was used. There was no findings specifically made as to which co-conspirator did what information was known by Mr. Valdez. So I do think that that is an issue. Especially if that's going to be... And again, we don't know which basis the district court's relying on, whether the ad aspect of it or the messaging aspect. But either way, because we don't know that, we have to assume that it's because of the fact that he was a co-conspirator. Now, I just wanted to touch briefly on the other issue that was raised in terms of the failure to provide Mr. Valdez with the decrease for his minor role. And I think that's extremely important in light of the facts of the situation. His attorney back at the district court argued that he was entitled to either a four-level reduction as a minimal participant or a two-level as a minor participant. Because in the facts of this case, this isn't a situation where Mr. Valdez was just... Counsel, you didn't raise this on your opening argument, right? No, I did not. So it wouldn't really probably be fair to... Yes, Your Honor. ...the government. If the court has no further questions, then I would ask that the court vacate Mr. Valdez's sentence and order that he be resentenced by the district court. Thank you. Thank you. I think you did a volunteer job on this, didn't you? Thank you very much for helping the court in this case. And thanks, as always, to the government. Nice to see everybody. Yeah.